1
2
3
4
5
6          UNITED STATES DISTRICT COURT
         EASTERN DISTRICT OF WASHINGTON
7
8  MARIO VIERA & CHRISTINA
   VIERA, husband and wife,
9                                    NO. CV-07-5010-EFS
              Plaintiffs,
10
         v.                          **ORDER GRANTING DEFENDANT'S
11                                   MOTION FOR SUMMARY JUDGMENT**
   COSTCO WHOLESALE CORPORATION,
12 a Washington Corporation,

13            Defendant.

14

15      A hearing occurred in the above-captioned matter on February 17,

16 2009.  Plaintiffs Mario and Christina Viera were present, represented by

17 John O'Leary.  Defendant Costco Wholesale Corporation ("Costco") was

18 represented by Steven Winterbauer.  Before the Court was Costco's Motion

19 for Summary Judgement (Ct. Rec. 38), which asks the Court to grant

20 summary judgment in Costco's favor and dismiss the action because

21 Plaintiffs fail to present sufficient evidence to support their Family

22 and Medical Leave Act claim, Washington Family Leave Act (WFLA) claim,

23 breach of the employee agreement claim, and claim for wrongful

24 termination in violation of public policy.  Plaintiffs oppose the motion,

25 contending that they presented sufficient evidence to survive summary

26 judgment.  After reviewing the submitted materials and relevant authority

ORDER ~ 1

and hearing oral argument, the Court is fully informed and grants Costco's motion.

**A.    Factual Background**[1]

    1.    <u>Personnel</u>

In 1993, Costco hired Mr. Viera to work at its Kennewick, Washington warehouse.  Mr. Viera worked as a front-end cashier and in the meat department.  Mr. Viera is married to Christina Viera, who was pregnant with their third child in the summer of 2006 - she was due at the end of November.  Ms. Viera's pregnancy was considered high risk and she, therefore, required Mr. Viera's help at home with the two (2) other children on some days.

In May 2001, Todd Young became the Kennewick Costco's manager.  Mr. Young was never Mr. Viera's immediate supervisor, and he and Mr. Viera rarely interacted with each other, apart from routine greetings. Shawn Welch is the payroll clerk at the Kennewick Costco and has worked there for approximately sixteen (16) years.  Ms. Welch processes the daily payroll, maintains the personnel files, administers leaves of absence, and maintains attendance records.

---

[1]    In ruling on this motion for summary judgment, the Court considered the facts and all reasonable inferences therefrom as contained in the submitted affidavits, declarations, exhibits, depositions, and the Joint Statement of Uncontroverted Facts (Ct. Rec. 54) in the light most favorable to Plaintiffs - the party opposing the motion. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1972) (*per curiam*).  The Court created the following factual recitation utilizing this standard.

Kathi Walker began working at the Kennewick Costco in 1989, and began her present job at the membership/refunds desk in 1999. Ms. Walker has filled in for Ms. Welch in payroll as needed for the last four (4) years.

2.  Benefits

Costco offers eligible employees leave under the federal Family and Medical Leave Act (FMLA). In determining leave availability under the FMLA, Costco uses the "rolling backward" method, i.e., each time an employee takes FMLA leave the remaining leave entitlement is the balance of the 12 (twelve) weeks that has not been used during the immediately preceding 12 (twelve) months.

Costco also offers eligible employees leave under its own Personal Medical Leave Policy. This leave is intended for employees who are not eligible for, or have exhausted, FMLA leave. It offers eligible employees up to 12 (twelve) weeks of unpaid leave in a 12-month period, depending on length of employment. This leave is only available for a personal medical condition and runs concurrently with FMLA leave. The terms of Costco's FMLA and Personal Medical Leave Policy are set forth in Costco's Employee Agreement.

In addition, Employee Agreement section 6.3 allows employees, who have worked at Costco between 10 (ten) and 15 (fifteen) years, four (4) weeks of paid vacation time, which is prorated if the employee was paid for less than 2,000 hours in the 12 (twelve) months preceding the anniversary date of their employment. Employee Agreement section 6.4 allows employees up to six (6) days of paid sick leave depending on hours worked in the year prior to the anniversary date of their employment.

ORDER ~ 3

Half of the paid sick leave earned by an employee's anniversary date and not used during the following year are paid off - the remainder accrues to the balance of the employee's available sick leave hours. The Employee Agreement also grants employees three (3) paid floating holidays after one (1) year of employment.

Mr. Viera acknowledges receiving and reviewing the Employee Agreement, including periodic revisions to it. The Employment Agreement states employees "can be secure and confident in your job here, based on the pledge our company's management makes to abide by the terms of this agreement."

    3.  <u>Mr. Viera's Leave</u>

In April 2005, Mr. Viera requested, and was granted, a leave of absence from April 13, 2005, through July 13, 2005 - a period of 12 (twelve) consecutive weeks (hereinafter referred to as the "2005 Leave"). Mr. Viera requested this leave to address his own serious health conditions, which included anxiety with depression and rapidly escalating social panic disorder. Mr. Viera subsequently requested, and was granted, an extension of his 2005 Leave from July 13, 2005, through September 1, 2005. Before that extension expired, Mr. Viera requested, and was granted, a second extension, which ran from September 2, 2005, through October 13, 2005. Mr. Viera's 2005 Leave ultimately extended 24 ½ consecutive weeks - April 13, 2005, to October 13, 2005. The first 12 (twelve) weeks of Mr. Viera's 2005 Leave, the period from April 13, 2005, through July 13, 2005, were designated as medical leave under the FMLA. The remaining 12 ½ weeks of Mr. Viera's 2005 Leave were provided

ORDER ~ 4

under Costco's Personal Medical Leave Policy.  Mr. Viera collected Short Term Disability payments during the entire period of his 2005 Leave.

In March 2006, due to a broken foot, Mr. Viera requested, and was granted, a leave of absence from March 3, 2006, through March 31, 2006 - a period of 4 (four) consecutive weeks (hereinafter referred to as the "2006 Leave").  At Mr. Viera's request, and with Mr. Young's approval, Mr. Viera's 2006 Leave subsequently extended from March 31, 2006, through June 19, 2006.  Accordingly, Mr. Viera's 2006 Leave ultimately extended for 14 ½ consecutive weeks.  At the time Mr. Viera requested his 2006 Leave, he was not eligible for FMLA leave because he had not worked 1,250 hours during the immediately preceding 12 months.  Mr. Viera's 2006 Leave was taken under Costco's Personal Medical Leave Policy.  Mr. Viera collected Short Term Disability benefits during the entire period of his 2006 Leave.

In late June or early July 2006, Mr. Viera told Mr. Young that his wife was having a difficult pregnancy and he needed to be at home more. Mr. Viera asked whether he could reduce his hours to part-time and work a morning shift.

On or about July 13, 2006, Mr. Viera received a counseling notice for his eighth unexcused absence in a period of 11 (eleven) months. Mr. Viera received unexcused absences for the following days: October 25, 2005 (one-half day); November 26, 2005; January 3, 17, and 25-26 (counted as one absence), 2006; February 25, 2006; March 3, 2006; June 29, 2006; and July 12, 2006 (one-half day).  With regard to absenteeism, the Employee Agreements states:

> If you or a member of your family has a serious illness which
> results in your incurring more instances of absenteeism than
> are permitted, an exception may be made so that any absence due
> to such illness will not count as an occasion of absenteeism,
> provided medical substantiation is produced, in accordance with
> FMLA and state regulations.

This is referred to by Costco as "KinCare."[2]  Under Costco's attendance policy, an employee typically will be discharged after 11 (eleven) unexcused absences in a 12-month period.

Mr. Viera used KinCare to take time off on July 14, 15, 21, and 22, 2006.

4.  Events at Issue

In either the second or third week of July 2006, Mr. Viera advised Mr. Young in his office that Mr. Viera may need to take time off to care for Mrs. Viera during her high-risk pregnancy and expressed concern about having to quit work.  Mr. Young advised Mr. Viera that he could take KinCare as long as he had reserves  -vacation, sick, and floaters - in the bank.  Mr. Young also advised Mr. Viera to put his request in writing.  Later that day, Mr. Young asked Mr. Viera if he could help out in the meat department on an upcoming date; Mr. Viera agreed.

Mr. Viera was scheduled to work on Friday, July 28, 2006, but he called Ms. Walker to report that he would be staying home because his wife was not doing well.  Mr. Young called Mr. Viera that day. The discussion's contents are disputed.  Mr. Viera contends that Mr. Young called and advised Mr. Viera that he was fired because Mr. Young needed a reliable employee and Mr. Viera was unreliable.  Mr. Viera, who was

---

[2]  KinCare is Costco's attempt to comply with the Washington Family Care Act.

ORDER ~ 6

familiar with the Employee Agreement, knew that an employee who, like him, had several years with Costco, could only be fired by someone higher up the chain of command than Mr. Young.[3]   Mr. Viera told Mr. Young that he could not fire him, to which Mr. Young responded, "I just did." Mr. Young then told Mr. Viera to pick up his final paycheck.

Mr. Viera called the Kennewick Costco on Sunday, July 30, 2006, and spoke with Ms. Welch to tell her that he needed to pick up his final paycheck.  Later that day, Mr. Viera went to pick up his final paycheck. The documentation reflected that he was leaving voluntarily.  He disputed this and thus did not sign the necessary paperwork in order to get paid. This paycheck, in addition to Mr. Viera's other 2006 paycheck stubs, contained information as to the amount of vacation and sick time available to him.

Mr. Viera called Mr. Young's boss, Mike Hayes, a Regional Operations Manager located in Issaquah, Washington.  At the time Mr. Viera called, Mr. Hayes was attending Costco's annual worldwide managers' conference in Seattle, Washington.   Consequently, he did not immediately return Mr. Viera's call.

Mr. Young called Mr. Viera again on July 31, 2006.  The contents of the discussion are disputed.  Mr. Viera contends that Mr. Young screamed at him for not picking up his final check and that Mr. Viera needed "to

---

[3]   The Employee Agreement provides: "Prior to terminating the employment of an individual who has been employed five or more years, the circumstances must be reviewed by an Executive Vice President or above."

ORDER ~ 7

1  get his story straight" as to why he left.  Mr. Young repeated that
2  Mr. Viera no longer worked for Coscto.

3     Mr. Hayes returned Mr. Viera's call on either July 31, 2006, or
4  August 1, 2006.  Mr. Hayes confirmed that Mr. Young did not have the
5  authority to fire Mr. Viera and informed Mr. Viera that he would look
6  into the situation and report back.

7     After speaking with Mr. Young, Mr. Hayes again spoke with Mr. Viera.
8  This call occurred either the same day that Mr. Hayes first spoke to
9  Mr. Viera or the next day.  Mr. Hayes told Mr. Viera that: Mr. Young was
10 under the impression that Mr. Viera had resigned; the situation appeared
11 to boil down to a miscommunication between Mr. Viera and Mr. Young;
12 Mr. Viera had not been fired; and Mr. Viera was still a Costco employee
13 and simply needed to return to his job.  Mr. Hayes also said that, with
14 respect to Mr. Viera's attendance, he would "wipe the slate clean" and
15 not count Mr. Viera's absence the previous Friday (July 28, 2006) as an
16 unexcused absence.

17    Mr. Viera did not return to his job at Costco.  Mr. Viera contends
18 that he could not return given the way Mr. Young treated him.  Mr. Viera
19 believes that Mr. Young had been waiting for a reason to fire him since
20 2004.  While Mr. Young called Mr. Viera to apologize in early August
21 2006, Mr. Viera did not return to work because he could no longer trust
22 Mr. Young.

23    Mr. Viera's third child was born in late November 2006.

24 **B.   Summary Judgment Standard**

25    Summary judgment is appropriate if the "pleadings, the discovery and
26 disclosure materials on file, and any affidavits show that there is no

ORDER ~ 8

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts. In the language of [Rule 56], the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted) (emphasis in original opinion).

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). This does not mean that a court will accept as true assertions made by the non-moving party that are flatly contradicted by the record. *See Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

ORDER ~ 9

**C.   Authority and Analysis**

   1.   <u>Family and Medical Leave Act</u>

   Coscto does not dispute that it is a covered entity under the FMLA or that time to care for a wife experiencing a high-risk pregnancy qualifies under the FMLA.  Costco contends, however, that Plaintiffs do not have a FMLA claim because Mr. Viera (1) was not an eligible employee and (2) did not suffer harm as a result of Mr. Young's unsanctioned action.  Plaintiffs maintain that Mr. Viera was entitled to FMLA leave because Defendant did not advise him that he was not eligible for such leave - an estoppel argument - and because Costco interfered with his ability to take FMLA leave.

   The FMLA's purpose is to balance the workplace demands with the needs of families and entitles employees to take reasonable leave for medical-related reasons while doing so "in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(3).  To achieve this goal, the FMLA entitles eligible employees up to twelve (12) weeks of leave each year for their own serious illness or to care for family members and guarantees reinstatement after taking this leave.  29 U.S.C. §§ 2612(a)(1), 2614(a)(1).  Further, employers are precluded from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided" by the FMLA, by either refusing or discouraging the taking of FMLA leave.  29 U.S.C. § 2615(a)(1); *see also Liu v. Amway Corp.*, 347 F.3d 1125, 1133 (9th Cir. 2003); 29 C.F.R. § 825.220(b)[4].

---

   [4]  The 1996 Code of Federal Regulations was in effect in July 2006

ORDER ~ 10

To prevail on a FMLA interference theory, the employee must establish:

> (1) he is an "[e]ligible employee," 29 U.S.C. § 2611(2); (2) the defendant is an "[e]mployer," 29 U.S.C. § 2611(4); (3) the employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1); (4) the employee gave the employer notice of his intention to take leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied the employee FMLA benefits to which he was entitled.

*Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007) (quoting *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003)); *Davis v. Mich. Bell Tel. Co.*, 543 F.3d 345, 350 (6th Cir. 2008).  Again, it is undisputed that Defendant is an employer subject to the FMLA and that Mr. Viera gave notice of the need to care for his wife due to her pregnancy.[5] The central dispute is whether Mr. Viera was an eligible employee.

> The term "eligible employee" means an employee who has been employed--
>
> (i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and
>
> (ii) for at least 1,250 hours of service with such employer during the previous 12-month period.

---

and controls Defendant's July 2006 employment decisions.

[5]  An eligible employee is entitled to FMLA leave "to care for the employee's spouse . . . with a serious health condition."  29 C.F.R. § 825.112(a)(3).  "Any period of incapacity due to pregnancy, or for prenatal care" is considered a serious health condition.  *Id.* § 825.115(b).

ORDER ~ 11

29 U.S.C. § 2611(2)(A).  The employee's eligibility is determined "as of the date leave commences."  29 C.F.R. § 825.110(d).  Costco uses the rolling back method - therefore, as of July 28, 2006, Mr. Viera needed to have worked 1,250 hours during the past twelve (12) months.  It is undisputed that Mr. Viera had not.  From July 29, 2005, to July 28, 2006, Mr. Viera worked approximately 763 hours.

Plaintiffs argue that Costco is estopped from arguing that Mr. Viera is ineligible because Costco did not advise Mr. Viera that he was ineligible to take FMLA leave.  This argument is not persuasive. Plaintiffs rely upon 29 C.F.R. § 825.110(d), which states, in pertinent part:

> If an employee notifies the employer of need for FMLA leave before the employee meets these eligibility criteria, the employer must either confirm the employee's eligibility based upon a projection that the employee will be eligible on the date leave would commence or must advise the employee when the eligibility requirement is met. If the employer confirms eligibility at the time the notice for leave is received, the employer may not subsequently challenge the employee's eligibility. In the latter case, if the employer does not advise the employee whether the employee is eligible as soon as practicable (i.e., two business days absent extenuating circumstances) after the date employee eligibility is determined, the employee will have satisfied the notice requirements and the notice of leave is considered current and outstanding until the employer does advise. *If the employer fails to advise the employee whether the employee is eligible prior to the date the requested leave is to commence, the employee will be deemed eligible*. The employer may not, then, deny the leave. Where the employee does not give notice of the need for leave more than two business days prior to commencing leave, the employee will be deemed to be eligible if the employer fails to advise the employee that the employee is not eligible within two business days of receiving the employee's notice.

29 C.F.R. § 825.110(d)(2006)(emphasis added).  Plaintiffs contend that Mr. Viera is deemed FMLA eligible because Costco failed to advise

ORDER ~ 12

Mr. Viera regarding is FMLA edibility in July 2006. Even if the regulation is read as proposed by Plaintiffs, the Court concludes such an interpretation impermissibly expands FMLA eligibility requirements. *See Davis*, 543 F.3d at 350 (noting that an employee may not assert a FMLA interference claim if he was not an eligible employee); *see also Ragsdale v. Wolverwine World Wide, Inc.*, 535 U.S. 81 (2002). The FMLA's eligibility language is clear - the employee must have worked 1,250 hours in the preceding 12-month period; the FMLA does not include an "estoppel" eligibility alternative.

Even if the FMLA recognizes an "estoppel" eligibility alternative, the Court concludes the employee must show that the employer misled the employee into believing that he was FMLA eligible. Here, there is no evidence that Costco reported to Mr. Viera that he was FMLA eligible and that Mr. Viera relied upon this information to his detriment. Accordingly, Defendant's motion for summary judgment on the FMLA claim is granted because Plaintiff failed to present evidence to establish a genuine issue of material fact as to his eligibility for FMLA benefits.

Lastly, even if the Court deemed Mr. Viera an eligible employee entitled to pursue an interference claim, Plaintiffs' FLMA interference claim fails because they failed to present sufficient evidence that Mr. Viera was harmed by Mr. Young's conduct. Mr. Viera admits that he did not believe Mr. Young had the authority to fire him, and Mr. Viera contacted Mr. Hayes, who confirmed that Mr. Viera was not fired and would not be considered absent for July 28, 2006. Accordingly, Mr. Viera did not suffer any financial or tangible harm. Further, Mr. Young's statements and conduct - albeit rude and insensitive - do not rise to the

1  level of a hostile work environment.  For these reasons, the Court finds

2  Costco did not interfere with Mr. Viera's ability to take FMLA leave

3  (assuming he was entitled to such).  *See Edgar v. JAC Prod., Inc.*, 443

4  F.3d 501, 510 (6th Cir. 2006) (noting that there is no FMLA claim if the

5  employee suffered no damages as a result of the employer's conduct);

6  *Jackson v. United Parcel Serv., Inc.*, 543 F.3d 1137, 1143 (8th Cir. 2008)

7  (postponing reinstatement to earlier-promoted position during grievance

8  process was not materially adverse action when employee was allowed to

9  continue working in prior position and was later provided full back pay

10 for the promotion); *Francom v. Costco Wholesale Corp.*, 98 Wn. App. 845,

11 857-58 (2000) (recognizing that adverse working environment does not

12 include casual, isolated, or trivial manifestations of a harassing

13 environment).  *See also Wisc. Dep't of Revenue v. William Wrigly, Jr.*

14 *Co.*, 505 U.S. 214, 231 (1992) (recognizing no right to relief when harm

15 is *de minimus*).

16     2.  <u>Washington Family Leave Act</u>

17     Costco also argues that Mr. Viera has no claim under the WFLA

18 because (1) the WFLA does not provide a private right of action and (2)

19 the WFLA provides no claim or remedy beyond those available under the

20 FMLA.

21     The WFLA does not provide a private right of action until the

22 employee receives a decision from the Washington Department of Labor and

23 Industries (DLI).  *See Blomster v. Nordstrom, Inc.*, 103 Wn. App. 252,

24 257-58 (2000).  There is no evidence that Mr. Viera filed a complaint

25 with the DLI within ninety (90) days of July 28, 2006.  Accordingly,

26 Plaintiffs may not pursue a WFLA claim.

ORDER ~ 14

3.  <u>Costco Employee Agreement</u>

Costco argues that Plaintiffs' breach of the Employee Agreement claim fails because there was no material breach since Mr. Viera was not fired and suffered no damages.  Plaintiffs contend Costco violated Mr. Viera's right (1) to be discharged for sufficient and proper cause and (2) to take leave to care for a family member with a serious illness without receiving an unexcused absence.

It is undisputed that the Employee Agreement formed an employment contract between Costco and Mr. Viera and that the Employee Agreement's KinCare provision specified that an absence utilized to care for a sick family member would not constitute an unexcused absence.  *See Gaglidari v. Denny's Restaurants, Inc.*, 117 Wn.2d 426, 433 (1991).  It is also undisputed that Mr. Viera received eight (8) absentee notices. Plaintiffs, however, fail to identify which, if any, of these notices should have been excused as a KinCare absence.  Therefore, there is no evidence to support Plaintiffs' argument that Costco breached the KinCare provision by issuing absentee notices for days that Mr. Viera was caring for a sick family member.

As to the July 28, 2006 events, Mr. Young told Mr. Viera that he was fired.  Such an instruction is in violation of the Employee Agreement because Mr. Viera had been employed for more than five (5) years.  Yet, it is undisputed that Mr. Viera was aware of his right to have upper management approve his termination and questioned Mr. Young's ability to do so by calling Mr. Hayes.  When Mr. Hayes returned Mr. Viera's phone call two (2) to three (3) days later, Mr. Hayes confirmed that Mr. Young did not have the authority to fire Mr. Viera, that Mr. Viera was not

1  fired, and that Mr. Viera would not be charged an absence for July 28,

2  2006.   Accordingly,  even  viewing  the  facts  in  Plaintiffs'  favor,

3  Mr. Viera was not fired because he knew that Mr. Young did not have the

4  authority to do so.  Further, Mr. Viera did not suffer any financial or

5  employment loss as a result of Mr. Young's unsanctioned conduct.

6      Mr. Viera contends that he suffered emotionally due to Mr. Young's

7  treatment of him and that he was unable to return to work because of this

8  treatment.  Mr. Viera declares that Mr. Young yelled at him on the phone

9  on July 28 and 31, 2006.  Mr. Viera stated that he could no longer trust

10 Mr.  Young.   Although  these  are  unfortunate  events,  the  Court  finds

11 Mr. Viera's emotional harm was *de minimis*.  *See Wisc. Dep't of Revenue*

12 *v. Wrigley, Jr., Co.*, 505 U.S. 214, 231 (1992).

13     Accordingly, the Court grants summary judgment in Costco's favor on

14 Plaintiffs' breach of the Employment Agreement cause of action.

15     4.  <u>Wrongful Termination in Violation of Public Policy</u>

16     Costco contends this "bootstrapped" claim fails for the same reasons

17 as  the  FMLA  and  WFLA  claims  -  further,  this  claim  is  impermissibly

18 duplicative.  In addition, Coscto argues that a public policy claim based

19 on the Washington Family Care Act (WFCA) fails because (1) the complaint

20 does not refer to the WFCA, (2) the WFCA provides only an administrative

21 complaint  procedure,  (3)  Plaintiffs  offer  no  facts  to  support  that

22 specific  days  were  taken  off  to  care  for  his  wife,  (4)  the  absentee

23 notices were not the basis for the alleged discharge, and (5) Mr. Viera

24 was not fired pursuant to the Employee Agreement and thus did not suffer

25 material  harm.   Plaintiffs  maintain  that  they  have  a  successful  tort

26 cause of action for wrongful discharge because Costco's issuance of the

absentee notices and termination of Mr. Viera contravenes clear public policy.  The Court need not address all of Costco's arguments because the claimed offensive conduct is already redressed by the FMLA, WFLA, and WFCA and, even assuming these statutes do not redress the offensive conduct, Plaintiffs failed to present evidence to create a genuine issue of material fact establishing that Mr. Viera was wrongfully discharged – either directly or constructively.

In Washington, an employee cannot be terminated in contravention of a clear mandate of public policy.  *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232 (1984).  The public policy exception "is a narrow one--one that should be recognized only when offensive conduct would otherwise go unredressed."[6]  *Blinka v. Wash. State Bar. Assoc.*, 109 Wn. App. 575, 586 (2001).   The employee has the burden to show that the discharge contravened a clear mandate of public policy.  *Id.*

> In determining whether a clear mandate of public policy is
> violated, courts should inquire whether the employer's conduct
> contravenes the letter or purpose of a constitutional,
> statutory, or regulatory provision or scheme.  Prior judicial
> decisions may also establish the relevant public policy.

---

[6]  Courts have found contravention of a clear mandate of public policy in four (4) general areas:  (1) where the discharge was a result of refusing to commit an illegal act, (2) where the discharge resulted due to the employee performing a public duty or obligation, (3) where the termination resulted because the employee exercised a legal right or privilege, and (4) where the discharge was premised on employee 'whistleblowing' activity.  *Dicomes v. Wash.*, 113 Wn.2d 612, 618  (1989).

> However, courts should proceed cautiously if called upon to declare public policy absent some prior legislative or judicial expression on the subject.

*Thompson*, 102 Wn.2d at 232.  In addition to the existence of a clear public policy, the employee must show (1) evidence that discouraging the conduct in which plaintiff engaged would jeopardize the public policy and (2) proof that the public-policy-linked conduct caused the dismissal. *Ellis v. City of Seattle*, 142 Wn.2d 450, 459 (2000); *Gardner v. Loomis Armored, Inc.*, 128 Wn.2d 931, 941 (1996); *Anica v. Wal-Mart Stores, Inc.*, 120 Wn. App. 481, 495 (2004). The burden then shifts to the employer to show an overriding justification for the dismissal.  *Ellis*, 142 Wn.2d at 459.

The FMLA, WFLA, and WFCA clearly create a public policy in favor of allowing certain employees to take time off to care for sick and injured family members.  Yet, because there are specific statutes promoting this public policy and providing a remedy for the violation of such, Plaintiffs cannot satisfy the jeopardy element.  *See Korslund v. Dyncorp Tri-Cities Servs., Inc.*, 156 Wn.2d 168 (2005) ("While the question whether the jeopardy element is satisfied generally involves a question of fact, the question whether adequate alternative means for promoting the public policy exist may present a question of law, i.e, where the inquiry is limited to examining existing laws to determine whether they provide adequate alternative means of promoting the public policy." (internal citations omitted).)  Accordingly, Plaintiffs may not base their wrongful discharge in violation of public policy claim on the FMLA, WFLA, or WFCA.

ORDER ~ 18

Even if the Court determined that these statutes do not redress the claimed offensive conduct, the Court concludes Plaintiffs failed to establish sufficient evidence that Mr. Viera was wrongfully discharged – either directly or constructively.  It is undisputed that (1) Mr. Viera knew that Mr. Young did not have the authority to fire him and (2) Mr. Hayes confirmed that Mr. Young did not have such authority and that Mr. Viera was not fired and would not be charged an absence.[7]  Accordingly, there is no evidence supporting a finding that Costco directly terminated Mr. Viera's employment.

To survive summary judgment on their wrongful constructive discharge in violation of public policy claim, Plaintiffs must present evidence establishing a genuine issue of material fact that Costco "deliberately made working conditions intolerable for . . . [Mr. Viera], that a 'reasonable person in . . . [Mr. Viera's] position' would be forced to quit, that . . . [Mr. Viera] did quit, and . . . [Mr. Viera] suffered damage as a result of being forced to quit." *Blomster*, 103 Wn. App. at 258 (quoting *Hill v. GTE Directories Sales Corp.*, 71 Wn. App. 132, 143 (1993)).  Generally, the question of whether the working conditions were intolerable is for the jury. *Blomster*, 103 Wn. App. at 258.  Recognizing that the status of the working conditions is generally a jury question, the Court finds that Plaintiffs failed to present sufficient evidence to establish a genuine issue of material fact as to constructive discharge.

---

[7]  Plaintiffs also do not contest that Mr. Viera would have been allowed to take the accrued sick and vacation time shown on his recent paystubs if he had asked for such leave.

ORDER ~ 19

First, there is no evidence that Costco ever denied Mr. Viera requested leave (other than Mr. Young's July 28, 2006 telephone call) over the span of his thirteen-year employment. Second, Mr. Viera does not dispute that he has eight (8) unexplained absences in 2006. Third, Mr. Viera rarely dealt with or worked with Mr. Young. Fourth, Mr. Young's conduct over the phone - albeit unprofessional and rude - was unsanctioned and does not rise to the level of a hostile work environment. *See Sneed v. Barna*, 80 Wn. App. 843, 849 (1996) (applying constructive discharge principles and concluding that working conditions were not so difficult that a reasonable person in the employee's position would have felt compelled to resign). Fifth, no wages or benefits were withheld from Mr. Viera. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461-62 (6th Cir. 2000) (Ten day loss of employment position with full reinstatement and no decrease in wage or salary or loss of benefits does not constitute an adverse employment action.). Sixth, Mr. Hayes advised Mr. Viera that Mr. Young was out of line and did not have the authority to fire him. Seventh, Mr. Young called and apologized for his conduct.

In conclusion, summary judgment in Costco's favor on the wrongful discharge in violatio nof public policy claim is appropriate because (1) the FMLA, WFLA, and WFCA already redress the recognized public policy, and (2) Plaintiffs failed to establish a genuine issue of material fact as to whether Mr. Viera was discharged.

5.   RCW 49.52 *et seq.*

Costco contends that it did not violate RCW 49.52 *et seq.* because it did not withhold any wages from Mr. Viera as there was no unlawful

discharge.    Plaintiffs contend that a willful, wrongful discharge occurred, depriving Mr. Viera of the wages he was entitled to if he had been allowed to continue employment.

Washington has a public policy favoring the payment of wages due employees, which is memorialized through statutes establishing both criminal and civil penalties for an employer's willful failure to pay wages.  RCW 49.48.010; RCW 49.52.050. A willful failure to pay occurs if the employer "'knows what he is doing, intends to do what he is doing, and is a free agent.'"  *Schilling v. Radio Holdings, Inc.*, 136 Wn.2d 152, 159-60 (quoting *Brandt*, 1 Wn. App. at 681); *see also Allstot v. Edwards*, 114 Wn. App. 625 (2002).

Because the Court finds that Mr. Viera was not discharged, the Court also finds there was no willful failure to withhold Mr. Viera's wages.[8]

**D.    Conclusion**

For the reasons given above, **IT IS HEREBY ORDERED:**

1.    Defendant Costco's Motion for Summary Judgement **(Ct. Rec. 38)** is **GRANTED;**

2.    All other pending motions are **DENIED AS MOOT.**

3.    **Judgment** is to be entered in Defendant's favor;

4.    This file shall be **CLOSED.**

///

///

///

---

[8]    In addition, the Court notes Costco took steps to provide Mr. Viera with his "final" check two days after the July 28, 2006 incident.

ORDER ~ 21

1      **IT IS SO ORDERED.**  The District Court Executive is directed to enter

2  this Order and provide copies to all counsel.

3          **DATED** this __27th__ day of February 2009.

4

5                              S/ Edward F. Shea
                              _____
6                              EDWARD F. SHEA
                         United States District Judge

7

8
   Q:\Civil\2007\5010.msj.wpd
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER ~ 22